925 P.2d 714

**STATE of Arizona, Appellee,**

v.

**Donald Martin RIGGS, Appellant.**

**No. 1 CA-CR 94-0970.**

Court of Appeals of Arizona, Division 1, Department B.

April 11, 1996.

Review Granted Oct. 21, 1996.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, and Kent E. Cattani, Assistant Attorney General, Phoenix, for Appellee.

Neal W. Bassett, Phoenix, for Appellant.

## OPINION

THOMPSON, Judge.

Donald Martin Riggs (defendant) appeals his convictions and sentences for six counts of forgery, claiming that business records and expert testimony were improperly admitted into evidence and that his right to confrontation was violated when he was not permitted to examine victim, Timothy Enos, about Enos's refusal to allow a pre-trial interview. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

Defendant and Enos started a business, Personal Gay Matching Service (PGMS), in June 1993. PGMS had a business checking account with Chase Bank of Arizona and both defendant and Enos were signators on the account. Enos allowed defendant to sign his name to checks in his absence for business advertising purposes. Two months later, Enos moved to Rhode Island, leaving defendant in constructive charge of the now insolvent PGMS.

In December, 1993, defendant attempted to cash a PGMS check at a grocery store, but

left the store while the check was being verified. The check was made out to defendant and signed with Enos's name. Alerted police subsequently found defendant in possession of five additional PGMS checks made out to himself and signed with Enos's name. Defendant admitted to police that he believed there were no funds in the PGMS account.

Defendant was consequently indicted on six counts of forgery. At trial, Sharon Bloch, the records custodian for First Interstate Bank (which had acquired Chase Bank prior to trial), was called as a witness to provide foundation for the introduction of PGMS's bank statements and signature card. The statements were to be used for the purpose of showing that there were insufficient funds to cover the check defendant had presented at the store, thereby demonstrating that defendant had a motive to forge checks with Enos's name. Because it was disputed as to whether Bloch was an undisclosed witness, the trial court limited her testimony to laying foundation for admission of the bank documents.

Out of the jury's presence, Bloch testified that the documents had been kept in her custody for the use of the bank in the regular course of business. She testified that the statements would have been made out at or near the time that the checking transactions occurred. She testified that the signature card would have been filled out the day it was dated. On cross-examination, Bloch admitted that she did not have personal knowledge that the records were prepared as indicated or what Chase's business practices had been in regards to preparing records. She further testified that the documents had not been certified as true and authentic. Over defendant's objections, the documents were admitted into evidence.

In the jury's presence, defense counsel asked Bloch to describe five of the checks in question. Bloch noted that the signatures appeared to be written in a different hand than their endorsements. On re-direct, the state then asked Bloch to compare the signature on one of the checks in question to defendant's handwriting on the PGMS signature card. Bloch indicated that the signatures also appeared dissimilar. Defendant objected that Bloch was not a handwriting expert and could not properly render an opinion on the matter. The objection was overruled.

Enos testified that he had not signed or authorized defendant to sign his name to any of the checks in question. On cross-examination, defendant asked Enos if he had refused to be interviewed prior to trial. The trial court sustained the state's objection to the question. However, on re-direct Enos stated that, believing he did not have to grant an interview to the defense attorney, he had declined to do so. On re-direct, Enos affirmed that defendant was a signator on the account.

Defendant was convicted on all six counts of forgery and sentenced to mitigated, repetitive, concurrent eight year sentences for each count. He timely appealed from judgment and sentence and we have jurisdiction pursuant to Ariz.Rev.Stat.Ann. (A.R.S.) § 12–120.21(A)(1), 13–4031, and 13–4033(A).

## DISCUSSION

### Admission of the Bank Statements and Signature Card

Defendant alleges that the bank statements and signature card were improperly admitted into evidence. Whether records are sufficiently reliable to be admitted is left to the sound discretion of the trial court. *State v. Petzoldt,* 172 Ariz. 272, 275, 836 P.2d 982, 985 (App.1991). The prosecution presented testimony from the custodian of records for the successor bank in support of the admission of the documents in question. The custodian testified that the documents were kept in the regular course of business and were made at or near the time when the checking transactions relating to that account occurred. The trial court admitted the records, noting that any inconsistencies in the clerical procedures went to the weight that should be accorded the documents, rather than to their admissibility. We concur with the court's analysis and find that the documents were properly admitted. *See Saks Int'l Inc. v. M/V "Export Champion",* 817 F.2d 1011, 1013 (2d Cir.1987) (documents may be properly admitted under the business

records exception even when their foundation is laid by a witness who is not an employee of the entity that prepared them).

■ Further, because the statements were simply cumulative evidence of insufficient funds, because defendant admitted that he believed there were insufficient funds to cover the checks, and because the authenticity of the signature card was not at issue, any conceivable error was necessarily harmless. *See State v. Turrentine*, 152 Ariz. 61, 66, 730 P.2d 238, 243 (App.1986) (error in admitting evidence already admitted to by defendant is essentially harmless). We do not see how testimony that the signatures on the checks *did not match* the defendant's signature as it appeared on the signature card prejudiced the defendant.

### Custodian's Expert Testimony

■ Defendant contends that he was unduly prejudiced when Bloch, an assertedly undisclosed witness, was allowed to go beyond the limitations on her testimony imposed by the trial court by giving her opinion on his signature when she was not a recognized handwriting expert. The admission of expert testimony will not be disturbed on appeal absent a clear abuse of discretion. *State v. Mincey*, 141 Ariz. 425, 441, 687 P.2d 1180, 1196 (1984), *cert. denied*, 469 U.S. 1040, 105 S.Ct. 521, 83 L.Ed.2d 409 (1984); *McGuire v. DeFrancesco*, 168 Ariz. 88, 92, 811 P.2d 340, 344 (App.1990). It is not necessary that an expert have the highest possible qualifications or degree of skill or knowledge in order to testify. *Lay v. City of Mesa*, 168 Ariz. 552, 554, 815 P.2d 921, 923 (App.1991). An expert is one whose opinions are based on special knowledge acquired through experience or careful study which is unknown to people in general. *State v. Superior Court*, 152 Ariz. 327, 330, 732 P.2d 218, 221 (App.1986).

■ At trial, Bloch testified about her special knowledge of signature comparison acquired from her past experience working in a bank. The trial court did not abuse its discretion in allowing Bloch to testify that the signature on the checks did not match the defendant's handwriting on the signature card. Because defendant's defense was that

he had permission to cash the checks in question, Bloch's opinion on his handwriting was inconsequential in any event.

### Cross–Examination of Enos

■ Defendant asserts that when the trial court sustained the state's objection to defense counsel's question to Enos regarding the refusal to grant a pre-trial interview, his right to confrontation was violated. The state argues that the ruling was proper given the implications of A.R.S. § 13–4433(E). This statute provides that, if a defendant comments at trial on the victim's refusal to be interviewed, the jury is to be instructed that the victim has the right to refuse an interview, pursuant to the Arizona Constitution. In light of our analysis of the right to refuse a defense interview, set forth below, we construe § 13–4433(E) as providing a remedy in the event comment on the victim's constitutional right is in fact made. The statute does not recognize a defendant's right to inquire as to the reason a victim has declined to be interviewed, as there is no such right.

■ The right to cross-examine a witness is a vital part of the right of confrontation. *Pointer v. Texas*, 380 U.S. 400, 403–04, 85 S.Ct. 1065, 1067–68, 13 L.Ed.2d 923 (1965); *State v. Correll*, 148 Ariz. 468, 473, 715 P.2d 721, 726 (1986). Furthermore, A.R.S. § 13–4433(E) clearly contemplates the possibility that a defendant might comment about the victim's refusal to be interviewed and provides a corrective instruction. Nothing in the statute expressly prohibits a defendant from questioning a victim about the exercise of the right to refuse defendant's discovery request.

■ However, Article II, § 2.1(A) of the Arizona Constitution expressly permits unwilling victims to refuse defendant's discovery requests. *State v. O'Neil*, 172 Ariz. 180, 181–82, 836 P.2d 393, 394–95 (App.1991). Although this right does not permit a victim to refuse to testify at defendant's trial, *S.A. v. Superior Court*, 171 Ariz. 529, 831 P.2d 1297 (App.1992), the provision does recognize a victim's "right to remain silent" in the face of attempts by a defendant to conduct pre-

trial interrogation. We hold that the trial court properly precluded defendant's attempt to impeach the victim's trial testimony through inquiries regarding the exercise of the constitutional right to decline a pretrial interview. It is fundamentally unfair for the state to advise an arrested person of the right to remain silent and then later introduce evidence of such post-arrest silence to impeach a defendant's trial testimony. The protection against such use of post-arrest silence is implicit in the right itself. *State v. Sorrell*, 132 Ariz. 328, 329, 645 P.2d 1242, 1243 (1982). Victims too must be advised of their constitutional right to refuse to be interrogated by the defendant. Ariz. Const. art. II, § 2.1(A)(2), (12). It would be fundamentally unfair to allow the victim's exercise of this constitutional right to be burdened by consequent attacks on trial testimony which the victim can be compelled to provide.

We reject the claim, advanced by the dissent, that the defendant's right to confront the testifying victim trumps the victim's right, implicit in the right to silence, to be free from the imputation that the real reason for the exercise of a constitutional right was to allow false testimony at trial.[1] Notwithstanding that some victims' rights may be required to give way to a defendant's due process rights, the victim's right to decline an interview is "absolute." *State v. Roscoe*, 912 P.2d 1297 (1996).[2] The right to decline a defense interview is "rooted" in the right of victims "to be treated with fairness, respect, and dignity, and to be free from intimidation, harassment, or abuse, throughout the criminal justice process." Ariz. Const. art. II, § 2.1(A)(1). To allow the victim to be subjected to baseless imputations as a result of the exercise of an "absolute" constitutional right would render subsection (A)(1) of the Victims' Bill of Rights nugatory.[3]

1. The dissent believes that the defendant has a constitutional right to cross-examine the victim regarding the refusal to grant a pretrial interview. In the entire string of citations offered by the dissent in an attempt to establish that it is reversible error for a trial court to refuse to allow the defendant the opportunity to cross-examine a victim about the victim's declination to participate in a pretrial interview, only one case, *People v. Atteberry*, 213 Ill.App.3d 851, 157 Ill.Dec. 365, 572 N.E.2d 434 (1991), found reversible error in such a scenario. In *Atteberry*, the Appellate Court of Illinois, Third District, relied on its own opinion in *People v. Timmons*, 114 Ill.App.3d 861, 70 Ill.Dec. 762, 449 N.E.2d 1366 (1983), which in turn followed a rule announced by a panel of the same court sitting in the Fourth District in *People v. Van Zile*, 48 Ill.App.3d 972, 6 Ill.Dec. 747, 363 N.E.2d 429 (1977). *Atteberry*, 157 Ill.Dec. at 366, 572 N.E.2d at 435; *Timmons*, 70 Ill.Dec. at 767, 449 N.E.2d at 1371. Neither *Timmons* nor *Van Zile* reversed convictions on the basis of the refusal to allow the defendant to challenge a witness as to the refusal to be interviewed. The rule on this issue in *Van Zile* was announced thusly: "No cases are cited to us squarely on point. . . . [T]he lack of cases is a puzzlement. We think that it is proper to bring out on cross-examination the fact that the witness has refused to talk to the examiner's side of the case. . . ." 6 Ill.Dec. at 751–52, 363 N.E.2d at 433–34.

The "puzzlement" of the *Van Zile* court regarding the purported lack of precedent, which led to a consequent determination that the court was free to fashion its own rule as to the proper scope of cross-examination in this kind of situation, borders on the absurd when it is seen that ample, clear, binding precedent did exist *but*

dictated a different holding at the time *Van Zile* was authored. In *People v. Peter*, 55 Ill.2d 443, 303 N.E.2d 398 (1973), *cert. denied*, 417 U.S. 920, 94 S.Ct. 2627, 41 L.Ed.2d 225 (1974), the Illinois Supreme Court held that the trial court did not abuse its discretion in disallowing the defendant to cross-examine prosecution witnesses regarding their refusal to participate in defense interviews before trial, and noted the general rule that trial courts have broad latitude in such cases. *Peter*, 303 N.E.2d at 404. The same holding was reached in *People v. Brown*, 87 Ill.App.3d 368, 42 Ill.Dec. 586, 409 N.E.2d 81 (1980) (defense counsel could not impeach victim by eliciting information that victim had refused to be interviewed by defense counsel prior to trial), and *People v. Williams*, 86 Ill.Dec. 703, 475 N.E.2d 1082, 475 N.E.2d 1082 (1985) (no abuse of discretion in excluding cross-examination regarding witness's refusal to talk to defense counsel).

We are unpersuaded by the dissent's citation to Illinois cases which ignore the pertinent holding of the supreme court of that state.

2. Arizona is one of a very few states that has elevated victims' rights to constitutional status. Neither Illinois nor Mississippi, the source of the cases relied upon by the dissent, has done so. *See* Thomas B. Dixon, Comment, *Arizona Criminal Procedure After the Victims' Bill of Rights Amendment: Implications of a Victim's Absolute Right to Refuse a Discovery Request*, 23 Ariz.St. L.J. 831, 833 n. 17 (1991).

3. There is nothing in the record here which would suggest any other reason for the victim's declination to be interviewed than the fact that he had a right to refuse such an interview.

■ A defendant's right to confrontation is subject to reasonable limitations. *Michigan v. Lucas,* 500 U.S. 145, 148–50, 111 S.Ct. 1743, 1746, 114 L.Ed.2d 205 (1991) (restrictions on a criminal defendant's right to confront adverse witnesses may not be arbitrary or disproportionate to the purpose it was designed to serve); *Wood v. Alaska,* 957 F.2d 1544, 1549 (9th Cir.1992) (Sixth Amendment right to cross-examination need not include presentation of irrelevant evidence; it is within the trial court's discretion to determine relevancy); *State ex rel. Romley v. Superior Court,* 172 Ariz. 232, 240, 836 P.2d 445, 453 (App.1992) (trial judges retain wide latitude, insofar as the Confrontation Clause is concerned, to impose reasonable limits on cross-examination based on concerns such as witnesses' safety or interrogation that is only marginally relevant). We thus construe Article II § 2.1(A) to implicitly protect a victim from interrogation at trial where, as here, the victim has refused an interview simply because he was told he had a constitutional right to do so. Moreover, on re-direct examination, Enos testified about his reasons for denying a pre-trial interview. Consequently, the answer to the question was put before the jury. We find no violation of defendant's constitutional rights.

## CONCLUSION

We have examined the record before us for fundamental error and have found none. Because we find that the PGMS business records were properly admitted into evidence, that Bloch's opinion was both properly admitted and insignificant, and that the defendant's inquiry into the victim's exercise of the right to decline a pre-trial interview was improper, we affirm the trial court convictions and sentences.

EHRLICH, J., concurs.

KLEINSCHMIDT, Judge, dissenting:

I respectfully dissent because I believe that limiting cross-examination of the victim regarding his refusal to grant a pretrial interview violated the defendant's right to confrontation under the United States and Arizona Constitutions.

The right to cross-examine a witness is a vital part of confrontation. *Davis v. Alaska,* 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1109–10, 39 L.Ed.2d 347 (1974). However, cross-examination may be restricted based on concerns for harassment, prejudice, or marginal relevance. *Michigan v. Lucas,* 500 U.S. 145, 149, 111 S.Ct. 1743, 1746, 114 L.Ed.2d 205 (1991); *State v. Fleming,* 117 Ariz. 122, 125, 571 P.2d 268, 271 (1977). The balance between these competing interests hinges upon whether the defendant was denied the opportunity to present information bearing on the issues in the case or on the credibility of a witness. *Delaware v. Van Arsdall,* 475 U.S. 673, 680, 106 S.Ct. 1431, 1435–36, 89 L.Ed.2d 674 (1986); *Fleming,* 117 Ariz. at 125, 571 P.2d at 271.

A witness's refusal to grant a pretrial interview is clearly relevant. In *State v. Van Zile,* 48 Ill.App.3d 972, 6 Ill.Dec. 747, 363 N.E.2d 429 (1977), the court reasoned:

> The credibility of a witness is always an issue—more correctly, in issue. A refusal to talk in advance of trial to the other side reasonably could indicate hostility by the witness to the inquiring side, or at least a bias for, or an interest in, a favorable outcome for the side calling him. We say 'could' because triers of the fact need not invariably so conclude, but they reasonably can do so.

\*　　\*　　\*　　\*　　\*　　\*

> Under our present system of liberal discovery, both sides at a minimum know the witnesses who will oppose them. Admittedly, both sides have the right to attempt to interview the other's witnesses. Admittedly too, witnesses have a corollary right not to be interviewed if they so choose. But this refusal, in our opinion, can be used against them to argue bias, hostility, interest in outcome, all of which look to credibility. It is a risk the witness or his side takes. That there are reasonable inferences from such conduct cannot be gainsaid. Although they are not inexorable, they are reasonable. It is up to the trier of the fact to accept or reject them.

*Id.* 6 Ill.Dec. at 747, 363 N.E.2d at 429. *See also People v. McCollum,* 239 Ill.App.3d 593,

180 Ill.Dec. 346, 607 N.E.2d 240 (1992) (state witness's right to refuse defense interview is relevant to demonstrate bias, hostility, prejudice, or interest in outcome); *People v. Allison*, 236 Ill.App.3d 175, 177 Ill.Dec. 116, 602 N.E.2d 1288 (1992) (same); *People v. Atteberry*, 213 Ill.App.3d 851, 157 Ill.Dec. 365, 572 N.E.2d 434 (1991) (same); *Lacy v. State*, 629 So.2d 591 (Miss.1993) (same); *Tolbert v. State*, 511 So.2d 1368 (Miss.1987) (same); *State v. Hallman*, 137 Ariz. 31, 668 P.2d 874 (1983) (inquiry into defense witness's refusal to honor State's subpoena is relevant to credibility). While a victim's refusal to be interviewed may be based on nothing more than a desire to be left alone, it must remain the jury's prerogative to decide whether such a refusal reflects on the victim's credibility. *Van Zile, supra* 6 Ill.Dec. at 747, 363 N.E.2d at 429. Refusing to allow the cross-examination was unreasonable and violated the Defendant's right to confrontation. *State v. Taggart*, 186 Ariz. 569, 925 P.2d 710 (App. 1996); *Allison, supra; Atteberry, supra.*

The Arizona Constitution does provide that a victim may "refuse an interview, deposition, or other discovery request by the defendant." Ariz. Const. Art. II, § 2.1(A)(5). The majority characterizes this right as "absolute," relying on dicta from *State v. Roscoe*, 912 P.2d 1297 (Ariz.App. February 29, 1996), which dealt with the constitutionality of classifying on-duty peace officers as "victims" under the Victims' Rights Act. However "absolute" a victim's right to refuse an interview may be under state law, it must clearly yield when it conflicts with the right to confront witnesses protected by the United States Constitution. *Reynolds v. Sims*, 377 U.S. 533, 584, 84 S.Ct. 1362, 1393, 12 L.Ed.2d 506, *rehr'g denied*, 379 U.S. 870, 871, 85 S.Ct. 12, 13 L.Ed.2d 76 (1964) (Supremacy Clause controls conflicts between state and federal constitutions); *State ex rel. Romley v. Superior Court In and For County of Maricopa*, 172 Ariz. 232, 836 P.2d 445 (App.1992) (Victims' Rights Act must yield to defendant's rights to due process and effective cross-examination of witnesses).

Arizona Revised Statutes Annotated ("A.R.S.") section 13–4433(E) provides:

If the defendant or the defendant's attorney comments at trial on the victim's refusal to be interviewed, the court shall instruct the jury that the victim has the right to refuse an interview under the Arizona Constitution.

I view this statute as a legislative acknowledgement that victims who refuse interviews are likely to be cross-examined about such refusal. The majority suggests that the statute was merely intended to cover situations where the victim's refusal to be interviewed was inadvertently or improperly placed before the jury. If that is what the legislature intended, I presume it would have said so. But more important than that, if section 13–4433(E) is read to bar cross-examination of a victim about his refusal to grant an interview, it violates the doctrine of separation of powers. It is not within the purview of the legislature to define what evidence is relevant. *See Barsema v. Susong*, 156 Ariz. 309, 314, 751 P.2d 969, 974 (1988) (statute purporting to bar evidence of insurance coverage is unconstitutional).

I also find unconvincing the majority's analogy of the victim's right not to be interviewed to a defendant's right to remain silent. A defendant's right to remain silent springs from the constitutional safeguard against self-incrimination. *Davis v. United States*, 512 U.S. 452, ——, 114 S.Ct. 2350, 2354, 129 L.Ed.2d 362 (1994); *State v. Anderson*, 102 Ariz. 295, 298, 428 P.2d 672, 675 (1967). It is rooted in the "distrust of self-deprecatory statements" and the desire to avoid putting a defendant into the "cruel trilemma of self-accusation, perjury or contempt." *Murphy v. Waterfront Comm'n of New York Harbor*, 378 U.S. 52, 55, 84 S.Ct. 1594, 1596, 12 L.Ed.2d 678 (1964). On the other hand, a victim's right to refuse a pre-trial interview rests on the desire to protect a victim's privacy and minimize contact with the defendant. *State ex rel. Dean v. City Court of Tucson*, 173 Ariz. 515, 516, 844 P.2d 1165, 1166 (1992). The defendant's right against self-incrimination is of more weight than the victim's right not to be interviewed. Moreover, cross-examination of a victim about his refusal to grant an interview does not entail any more of an invasion of privacy or a contact with the defendant than that

already inherent in the requirement that the victim testify at trial. *S.A. v. Superior Court In and For County of Maricopa,* 171 Ariz. 529, 831 P.2d 1297 (App.1992) (Victims' Rights Act does not give crime victim right to refuse to testify at defendant's criminal trial). In other words, such cross-examination of the victim, unlike cross-examination concerning defendant's exercise of his right to remain silent, does not defeat the purpose for which the right was established.

Violations of a defendant's confrontation right are susceptible to harmless error analysis. *Delaware v. Van Arsdall,* 475 U.S. 673, 680, 106 S.Ct. 1431, 1435–36, 89 L.Ed.2d 674 (1986); *State v. Medina,* 178 Ariz. 570, 577, 875 P.2d 803, 810 (1994). The victim and the defendant were partners in a failing business, and at trial the victim asserted that the defendant was not authorized to sign the victim's name on the business checks. Thus, the victim's testimony was conceivably self-serving and restricting cross-examination precluded a thorough inquiry into his motive for denying the pretrial interview. The prejudice that ensues from this kind of error tends to be self-concealing. Nor do I believe the problem is solved because, on redirect examination, the witness simply said he denied a pretrial interview because he "did not want to [talk to defense counsel]." A friendly question by the prosecutor is hardly a substitute for cross-examination. Thus, I cannot find that the error was harmless beyond a reasonable doubt and would reverse.