925 P.2d 710

**STATE of Arizona, Appellee,**

v.

**Darren Allen TAGGART, Appellant.**

**No. 1 CA–CR 94–0926.**

Court of Appeals of Arizona,
Division 1, Department D.

April 11, 1996.

Review Granted Oct. 21, 1996.

570

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, and Joseph T. Maziarz, Assistant Attorney General, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Edward F. McGee, Deputy Public Defender, Phoenix, for Appellant.

KLEINSCHMIDT, Judge.

Darren Taggart appeals from his conviction on two counts of aggravated assault. He claims that he should have been allowed to cross-examine the victims about their refusal to be interviewed by his attorney before trial. We find that although the restriction on cross-examination violated the Defendant's right to confrontation, the error, under the particular facts of this case, was harmless beyond a reasonable doubt.

Late on a night in March of 1994, the victims, R and P, were riding home on their bicycles from their jobs as restaurant workers when the Defendant rode up to them on another bicycle, skidded to a stop, shined a flashlight on P's face, pulled a knife, and demanded, "all you got." The victims became frightened and P rode off on his bike. The Defendant chased P, and R followed them both. After a short chase, the Defen-

dant stopped and stated, "I'm sorry, I got the wrong guys."

R and P immediately reported the incident to the police. They described their assailant as a white male, 25 to 27 years old, with short blond hair parted in the middle. They said he was wearing a white sweatshirt, faded jeans, and black and brown gloves. They also said he had a light colored backpack, a black and yellow flashlight, and was riding a blue mountain bike with curved handlebars.

Shortly after the incident was reported, a police officer spotted the Defendant who fit the assailant's description and was riding a blue mountain bike. When the officer made a U-turn, the Defendant turned into an apartment complex. As the Defendant attempted to leave the complex through a gate, an officer arrested him. The Defendant was wearing blue jeans, a sweatshirt, gloves, and otherwise fit the physical descriptions given by the victims. Two knives and a black and yellow flashlight were found in the Defendant's possession. Both victims individually identified the Defendant. Victim P also identified the Defendant's bicycle.

The Defendant was charged with two counts of aggravated assault. Prior to trial, both R and P declined the request of the Defendant's counsel for an interview. When R testified at trial, the defense attorney asked him if he had refused to grant a pretrial interview. The court sustained the prosecutor's objection to the question.

When the Defendant testified, he admitted that he had ridden up to the victims thinking they were friends but then realized they were two teenagers and stated, "Sorry, I got the wrong guys." He testified that he then made a U-turn, got off his bike, took his knife out of his right rear pocket and placed it in his left rear pocket and put some pipe cleaners in his right rear pocket. He testified that at that point, one of the victims rode off, circled around, and then both victims rode away. The Defendant asserted he never threatened the victims or attempted to rob them. The Defendant was found guilty on both counts.

The Defendant argues that the restriction on his cross-examination of the victims violat-

ed his federal and state constitutional rights to confrontation. The trial judge sustained the objection because he believed: (1) that a victim's refusal to be interviewed does not show bias or prejudice and is not useful to impeach the witness; (2) that the Victims' Bill of Rights suggests that it is improper for the defense to comment at trial on the victim's refusal to grant an interview; and (3) that it is as improper to comment on the exercise of a victim's right not to give an interview as it is to comment on a defendant's invocation of his right to remain silent. We disagree and find that limiting cross-examination on this subject was a denial of the right to confront witnesses.

■ The right to cross-examine a witness is a vital part of confrontation. *Davis v. Alaska,* 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1109–10, 39 L.Ed.2d 347 (1974). However, cross-examination may be restricted based on concerns for harassment, prejudice, or marginal relevance. *Michigan v. Lucas,* 500 U.S. 145, 149, 111 S.Ct. 1743, 1746, 114 L.Ed.2d 205 (1991); *State v. Fleming,* 117 Ariz. 122, 125, 571 P.2d 268, 271 (1977). The balance between these competing interests hinges on whether the defendant was denied the opportunity to present information bearing on the issues in the case or on the credibility of a witness. *Delaware v. Van Arsdall,* 475 U.S. 673, 680, 106 S.Ct. 1431, 1435–36, 89 L.Ed.2d 674 (1986); *Fleming,* 117 Ariz. at 125, 571 P.2d at 271.

■ A witness's refusal to grant a pre-trial interview is relevant. An Illinois court, in *State v. Van Zile,* 48 Ill.App.3d 972, 6 Ill.Dec. 747, 363 N.E.2d 429 (1977), reasoned that:

The credibility of a witness is always an issue—more correctly, in issue. A refusal to talk in advance of trial to the other side reasonably could indicate hostility by the witness to the inquiring side, or at least a bias for, or an interest in, a favorable outcome for the side calling him. We say 'could' because triers of the fact need not invariably so conclude, but they reasonably can do so.

\* \* \* \* \* \*

Under our present system of liberal discovery, both sides at a minimum know the witnesses who will oppose them. Admittedly, both sides have the right to attempt to interview the other's witnesses. Admittedly too, witnesses have a corollary right not to be interviewed if they so choose. But this refusal, in our opinion, can be used against them to argue bias, hostility, interest in outcome, all of which look to credibility. It is a risk the witness or his side takes. That there are reasonable inferences from such conduct cannot be gainsaid. Although they are not inexorable, they are reasonable. It is up to the trier of the fact to accept or reject them.

*Id.* at 751, 363 N.E.2d at 433; *see also People v. McCollum,* 239 Ill.App.3d 593, 180 Ill.Dec. 346, 349, 607 N.E.2d 240, 243 (1992) (state witness's right to refuse defense interview is relevant to demonstrate bias, hostility, prejudice, or interest in outcome); *People v. Allison,* 236 Ill.App.3d 175, 177 Ill.Dec. 116, 124, 602 N.E.2d 1288, 1296 (1992) (same); *People v. Atteberry,* 213 Ill.App.3d 851, 157 Ill.Dec. 365, 366, 572 N.E.2d 434, 435 (1991) (same); *Lacy v. State,* 629 So.2d 591, 593 (Miss.1993) (same); *Tolbert v. State,* 511 So.2d 1368, 1378 (Miss.1987) (same), *cert. denied,* 484 U.S. 1016, 108 S.Ct. 723, 98 L.Ed.2d 672 (1988); *State v. Hallman,* 137 Ariz. 31, 36, 668 P.2d 874, 879 (1983) (inquiry into defense witness's refusal to honor state's subpoena is relevant to credibility). While a victim's refusal to be interviewed may be based on nothing more than a desire to be left alone, it must remain the jury's prerogative to decide whether such a refusal reflects on the victim's credibility. *Van Zile,* 6 Ill.Dec. at 747, 363 N.E.2d at 429. Refusing to allow the cross-examination was unreasonable and violates the Defendant's right to confrontation. *Allison, supra; Atteberry, supra; contra State v. Riggs,* 186 Ariz. 573, 925 P.2d 714 (App.1996).

■ The Arizona Constitution does provide that a victim may "refuse an interview, deposition, or other discovery request by the defendant." Ariz. Const. art. II, § 2.1(A)(5). Arizona Revised Statutes Annotated ("A.R.S.") section 13–4433(E) further provides:

572

If the defendant or the defendant's attorney comments at trial on the victim's refusal to be interviewed, the court shall instruct the jury that the victim has the right to refuse an interview under the Arizona Constitution.

Section 13–4433(E) is a legislative acknowledgement that victims who exercise the right to refuse interviews can be cross-examined about such refusals. In *Riggs, supra,* the majority interprets this statute as merely intending to cover situations where the victim's refusal to be interviewed was inadvertently placed before the jury. Interpreting section 13–4433(E) to bar cross-examination about the refusal would attribute an intent to the legislature that would violate the doctrine of separation of powers. *Barsema v. Susong,* 156 Ariz. 309, 314, 751 P.2d 969, 974 (1988) (statute purporting to bar evidence of insurance coverage is unconstitutional violation of separation of powers doctrine). Moreover, a victim's state constitutional right to refuse an interview must yield when it conflicts with a defendant's right to confront witnesses protected by the federal constitution. *Reynolds v. Sims,* 377 U.S. 533, 584, 84 S.Ct. 1362, 1393, 12 L.Ed.2d 506 (1964) (Supremacy Clause controls conflicts between state and federal constitutions); *State ex rel. Romley v. Superior Court,* 172 Ariz. 232, 236, 836 P.2d 445, 449 (App.1992) (Victims' Rights Act must yield to defendant's right to due process and effective cross-examination of witnesses).

■ We also find the trial judge's analogy—of the victim's right not to be interviewed to a defendant's right to remain silent—unconvincing. A defendant's right to remain silent springs from the constitutional safeguard against self-incrimination. *Davis v. United States,* 512 U.S. 452, ——, 114 S.Ct. 2350, 2354, 129 L.Ed.2d 362 (1994); *State v. Anderson,* 102 Ariz. 295, 298, 428 P.2d 672, 675 (1967). It is rooted in the "distrust of self-deprecatory statements" and the desire to avoid putting a defendant in the "cruel trilemma of self-accusation, perjury or contempt." *Murphy v. Waterfront Comm'n of New York Harbor,* 378 U.S. 52, 55, 84 S.Ct. 1594, 1596, 12 L.Ed.2d 678 (1964). On the other hand, a victim's right to refuse a pretrial interview rests on the desire to protect a victim's privacy and minimize contact with the defendant. *State ex rel. Dean v. City Court of Tucson,* 173 Ariz. 515, 516, 844 P.2d 1165, 1166 (App.1992). A defendant's right against self-incrimination is of more weight than a victim's right not to be interviewed. Moreover, cross-examination of a victim about his refusal to grant an interview does not entail any more of an invasion of privacy or a contact with a defendant than that already inherent in the requirement that a victim testify at trial. *S.A. v. Superior Court,* 171 Ariz. 529, 531, 831 P.2d 1297, 1299 (App.1992) (Victims' Rights Act does not give crime victim right to refuse to testify at defendant's criminal trial). In other words, such cross-examination of the victim, unlike cross-examination concerning a defendant's exercise of his right to remain silent, does not defeat the purpose for which the right was established.

■ Violations of a defendant's confrontation right are susceptible to harmless error analysis. *Van Arsdall,* 475 U.S. at 681, 106 S.Ct. at 1436 (1986); *State v. Medina,* 178 Ariz. 570, 577, 875 P.2d 803, 810 (1994). Here, the restriction on cross-examination precluded an inquiry into the victims' motives for denying the pretrial interviews. While we are sensitive to the fact that this kind of self-concealing error is dangerous because motive and attitude might never be discovered if cross-examination is limited, in this case there appears to be little chance that the refusal of the witnesses to be interviewed was particularly significant. The Defendant does not claim that this is a case of mistaken identity. He asserts that the victims misunderstood the nature of his actions. The victims were not acquainted with the Defendant, and the Defendant does not supply any conceivable motive they would have to make a false report of a crime to the police. The victims' testimony was plausible, consistent, and partially corroborated by the Defendant's own admissions. The evidence of the Defendant's guilt was very strong, and we therefore find that the error was harmless beyond a reasonable doubt. *Van Arsdall, supra; Medina, supra.*

The State concedes that another claim of error does have merit. The trial court's minute entry mistakenly reflects that the Defendant committed the crimes while on felony release, in violation of A.R.S. section 13–604.02. That allegation was withdrawn and was given no effect at sentencing. The reference in the minute entry to section 13–604.02 should be deleted.

We have reviewed the record for fundamental error and have found none. The judgments of conviction and sentences are affirmed. The reference in the minute entry to the Defendant being on felony release status at the time of the offense is deleted.

PATTERSON, P.J., and GARBARINO, J., concur.