IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | 2 CA-CR 2010-0176 |
| | ) | DEPARTMENT A |
| Appellee, | ) | |
| | ) | O P I N I O N |
| v. | ) | |
| | ) | |
| | ) | |
| MICHAEL LORENZO RIVERA, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20084422

Honorable Richard D. Nichols, Judge

VACATED IN PART; AFFIRMED IN PART

Thomas C. Horne, Arizona Attorney General
  By Kent E. Cattani and Alan L. Amann
                                                        Tucson
                                                Attorneys for Appellee

Barton & Storts, P.C.
  By Brick P. Storts, III
                                                        Tucson
                                                Attorneys for Appellant

H O W A R D, Chief Judge.

¶1          Following a jury trial, appellant Michael Rivera was convicted of second-degree murder, drive-by shooting, discharging a firearm at a residential structure, and five counts of endangerment.  He was sentenced to a combination of consecutive and

concurrent prison terms totaling fifty-eight years. On appeal, Rivera argues there was insufficient evidence to sustain the convictions for drive-by shooting and endangerment. He further asserts that his consecutive sentences for drive-by shooting and discharging a firearm at a residential structure constitute double punishment and that the trial court erred in finding a state witness unavailable, thereby violating his right to confrontation. For the following reasons, we vacate Rivera's conviction and sentence for the drive-by shooting and affirm his remaining convictions and sentences.

## Factual and Procedural Background

¶2 "We view the facts in the light most favorable to sustaining the convictions." *State v. Robles*, 213 Ariz. 268, ¶ 2, 141 P.3d 748, 750 (App. 2006). Rivera attended a party during which he and some others were asked to leave. As he was driving away, Rivera fired six shots at the house, killing R.L. At Rivera's first trial, which ended in a mistrial, a witness who later was unavailable testified. After a second trial, the jury found Rivera guilty of all counts, and the court sentenced him as stated above. This appeal followed.

## Sufficiency of the Evidence

¶3 Rivera argues the record contains insufficient evidence to support his conviction for drive-by shooting and his five convictions for endangerment. We examine the sufficiency of the evidence to determine whether substantial evidence supports the jury's verdict. *State v. Stroud*, 209 Ariz. 410, ¶ 6, 103 P.3d 912, 913 (2005). "Substantial evidence is proof that reasonable persons could accept as sufficient to

2

support a conclusion of a defendant's guilt beyond a reasonable doubt." *State v. Spears*, 184 Ariz. 277, 290, 908 P.2d 1062, 1075 (1996). Substantial evidence "may be either circumstantial or direct." *State v. Henry*, 205 Ariz. 229, ¶ 11, 68 P.3d 455, 458 (App. 2003). We will reverse a conviction "only if 'there is a complete absence of probative facts to support [the jury's] conclusion.'" *State v. Carlisle*, 198 Ariz. 203, ¶ 11, 8 P.3d 391, 394 (App. 2000), *quoting State v. Mauro*, 159 Ariz. 186, 206, 766 P.2d 59, 79 (1988).

Conviction for Drive-by Shooting

**¶4** Rivera notes the indictment specifically alleged he had committed the offense by shooting at a particular victim, R.C., and the verdict also specifies that the victim of the drive-by shooting was R.C. Section 13-1209(A), A.R.S., defines drive-by shooting as "intentionally discharging a weapon from a motor vehicle at a person, another occupied motor vehicle or an occupied structure." If a statute requires a certain mental state but does not specify which elements require that mental state, it applies to every element in the absence of legislative intent to the contrary. A.R.S. § 13-202(A). An indictment charging a defendant under one part of a statute does not automatically include any other parts of the same statute. *See* Ariz. R. Crim. P. 13.2(a) ("The indictment . . . shall be a plain, concise statement of the facts sufficiently definite to inform the defendant of the offense charged."); *see also State v. Freeney*, 223 Ariz. 110, ¶¶ 16-17, 219 P.3d 1039, 1042 (2009) (expanded indictment which included other subsection of statute effectively amended indictment and changed nature of offense).

Therefore, as charged, the state was required to prove Rivera intentionally discharged his weapon at R.C.

¶5 The state identifies no evidence showing Rivera intentionally targeted R.C., nor have we found any. Therefore, it appears the conviction is not supported by substantial evidence. *See Stroud*, 209 Ariz. 410, ¶ 6, 103 P.3d at 913. The state, however, suggests that, even though the indictment and verdict form specified Rivera had shot at R.C., he nevertheless could be convicted if he intentionally shot at any person or occupied structure because the trial court's instructions included both. But it cites no authority for the proposition that incorrect jury instructions implicitly could amend the indictment or negate the specific jury finding that Rivera was guilty of drive-by shooting at R.C. And, indeed, the law suggests otherwise.

¶6 Rule 13.5(b), Ariz. R. Crim. P., states: "The . . . grand jury indictment limits the trial to the specific charge or charges stated . . . in the indictment. The charge may be amended only to correct mistakes of fact or remedy formal or technical defects . . . ." "A defect may be considered formal or technical when its amendment does not operate to change the nature of the offense charged or to prejudice the defendant in any way." *State v. Bruce*, 125 Ariz. 421, 423, 610 P.2d 55, 57 (1980). "Further, proper application of Rule 13.5(b) hinges on the existence of some mistake or defect in the indictment for which a corrective amendment is needed." *Freeney*, 223 Ariz. 110, ¶ 18, 219 P.3d at 1042. If the state charges an offense it simply cannot prove, the indictment is neither defective nor subject to amendment. *See id.* ¶ 19.

4

**¶7**        In *State v. Rybolt*, 133 Ariz. 276, 279, 650 P.2d 1258, 1261 (App. 1982), *overruled on other grounds by State v. Diaz*, 142 Ariz. 119, 688 P.2d 1011 (1984), the defendant claimed the jury instructions had allowed the jury to convict him based on acts not charged in the indictment. This court concluded that the trial court had not amended the original charges through the instructions, noting that the verdict form conformed to the indictment. *Id.* at 280, 650 P.2d at 1262. Although the context in *Rybolt* was different, the same principles apply here. Rivera was charged with and convicted of shooting at R.C. The incorrect jury instructions did not amend the charge. *See id*. Therefore, the state's reliance on the language of the jury instructions and assertion that we are obligated to perform a fundamental error review are incorrect.

**¶8**        Furthermore, the indictment here was not amended automatically to conform to the evidence. "When the amendment results in no change in the underlying offense or actual prejudice to the defendant, the indictment is automatically deemed amended to conform to the evidence adduced at trial." *State v. Jones*, 188 Ariz. 534, 544, 937 P.2d 1182, 1192 (App. 1996). But, "[w]hen the elements of one offense materially differ from those of another—even if the two are defined in subsections of the same statute—they are distinct and separate crimes." *Freeney*, 223 Ariz. 110, ¶ 16, 219 P.3d at 1042. Shooting at a house or other persons is distinct from shooting at R.C. *Cf. State v. Fimbres*, 222 Ariz. 293, ¶ 40, 213 P.3d 1020, 1031 (App. 2009) (finding error when

change in factual allegation of original indictment altered nature of original offense charged).[1] Accordingly, the indictment was not amended automatically.

¶9 We therefore find there was insufficient evidence to support Rivera's conviction for drive-by shooting as he was charged and convicted and vacate that conviction and the accompanying sentence.[2]

Convictions for Endangerment

¶10 Rivera additionally contends there was insufficient evidence to support his convictions for counts four through eight for endangerment.[3] "A person commits endangerment by recklessly endangering another person with a substantial risk of imminent death or physical injury." A.R.S. § 13-1201(A). Here the indictment and verdict forms specified endangerment by threat of imminent death. Rivera appears to

---

[1]The parties have not argued and we do not decide whether § 13-1209(A) describes two different crimes or two ways of committing a single crime under *State v. Rivera*, 207 Ariz. 69, ¶ 10, 83 P.3d 69, 72-73 (App. 2004).

[2]Furthermore, because we vacate Rivera's conviction and sentence for drive-by shooting, we need not address his remaining arguments as to this count or his argument that consecutive sentences for counts two and three—drive-by shooting and discharging a firearm at a residential structure—constitute double punishment.

[3]To the extent Rivera claims he suffered a due process violation distinct from his challenge as to the sufficiency of the evidence, he does not provide sufficient argument or citation to any evidence and has waived any such argument. *See* Ariz. R. Crim. P. 31.13(c)(1)(vi) ("An argument . . . shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on."); *State v. Bolton*, 182 Ariz. 290, 298, 896 P.2d 830, 838 (1995) (issue waived when argument insufficient to permit appellate review).

claim that insufficient evidence established that the victims were near enough to the living room, where the bullets entered, to be in substantial risk of imminent death.[4]

¶11        A detective testified that the caliber of gun used by the defendant was "very powerful" and had "the capability of going through several layers of wall." He also testified that several of the bullets entered the house through the exterior wall and some of them continued through an interior wall into another room in the house. Additionally, the evidence established that all of the victims named in counts four through eight had been in the house at the time of the shooting. Because reasonable jurors could have concluded that any of the victims inside the house had been exposed to a substantial risk of imminent death from the bullets coming through the walls, we find that sufficient evidence supported Rivera's convictions on counts four through eight. *See State v. Carreon*, 210 Ariz. 54, ¶¶ 38, 42-43, 107 P.3d 900, 909-10 (2005) (upholding endangerment convictions where children asleep in bedroom when victims shot in adjacent room, thin wall separated the two rooms, and bedroom door in close proximity to where one victim collapsed).

---

[4]Rivera asserts in his statement of facts that the jury instructions for count seven included the endangerment of K.C. but the verdict form was for the endangerment of M.C. He alleges there was no instruction on the endangerment of M.C. because "there was no evidence presented as to her whereabouts at the time of the shooting." But Rivera cites to no evidence of this and presents no further argument as to what irregularity this may have caused. Thus, he has waived any such argument. *See* Ariz. R. Crim. P. 31.13(c)(1)(vi); *Bolton*, 182 Ariz. at 298, 896 P.2d at 838 (issue waived when argument insufficient to permit appellate review).

**Unavailability of Witness**

¶12        Rivera further contends that the trial court erred in finding that one of the state's witnesses, P.G., was unavailable because the state's efforts to locate her were "superficial" and that this error resulted in a denial of his Sixth Amendment right to confront the witness when her testimony from his prior trial was read into evidence. We review for an abuse of discretion a finding of unavailability. *State v. Montaño*, 204 Ariz. 413, ¶ 25, 65 P.3d 61, 68 (2003).

¶13        "'A witness is not unavailable for purposes of the . . . exception to the confrontation requirement unless the prosecutorial authorities have made a *good-faith effort* to obtain his presence at trial.'" *Id.*, *quoting Ohio v. Roberts*, 448 U.S. 56, 79 (1980), *abrogated in part on other grounds by Crawford v. Washington*, 541 U.S. 36 (2004). "The length to which the state must go to produce a witness is a question of reasonableness." *Id.* ¶ 26. And a good faith search means that "obvious and essential leads must be investigated." *State v. Edwards*, 136 Ariz. 177, 182, 665 P.2d 59, 64 (1983). But the state is not required to invoke international treaties in its attempt to locate a witness if the state made otherwise reasonable efforts. *Montaño*, 204 Ariz. 413, ¶ 29, 65 P.3d at 69.

¶14        Rivera first contends it was not reasonable for the state to attempt to contact P.G. through the attorney of a known associate of hers because "[i]t is not the duty of defendants in other cases, such as [this associate], to locate witnesses for the State." However, this associate was the state's contact for P.G. before Rivera's first trial and was

8

responsible for ensuring that she was present to testify at that time. Furthermore, the state only attempted to contact P.G. in this manner after the subpoena mailed to her last known address was returned. In addition, the state conducted a utilities check, a driver license check, and a criminal history check in search of a current address, and it contacted law enforcement to find additional information about her. The state also contacted "other civilian witnesses" and called the three phone numbers it had for her in an attempt to locate P.G. Given the history of the state's contact with P.G. and combined with its other efforts to locate P.G., Rivera's contention is unavailing.

¶15        Rivera also argues the state did not follow all available leads because it failed to investigate an address it had for P.G. The state mailed a subpoena to the address it had for P.G., but it was returned because the address was invalid. And, although Rivera asserts the state "made no attempt to contact" P.G. at a particular address, he offers no proof of this assertion. In fact, at the hearing on unavailability, defense counsel did not follow up on his question about what address was used when the state mailed the subpoena, and such a question might have helped determine if there had been an additional address the state could have pursued.

¶16        Citing *State v. Medina*, 178 Ariz. 570, 576, 875 P.2d 803, 809 (1994), and *State v. Mokake*, 171 Ariz. 179, 829 P.2d 1225 (App. 1991), Rivera further asserts that the state's efforts were insufficient because it "made no formal attempt" to follow up on its belief that P.G. was living in Mexico with her mother. In *Mokake*, this court concluded that the state had not acted in good faith because the government of Lesotho

9

had indicated that it knew how to contact each of the witnesses and instructed the state how to proceed to secure their presence, but the state had failed to do so. 171 Ariz. at 180, 829 P.2d at 1226. And in *Medina*, our supreme court examined the state's failure to procure the presence of a witness who was in federal custody in Texas. 178 Ariz. at 572-73, 875 P.2d at 805-06. Relying in part on *Mokake*, the court stated, "the prosecutor must use existing formal procedures for obtaining the presence of witnesses before a court may conclude that the prosecutor made a good faith effort." *Id.* at 576, 875 P.2d at 809. But our supreme court more recently has clarified that the use of such formal procedures, at least in an international context, is not "required if . . . the state's efforts are otherwise reasonable." *Montaño*, 204 Ariz. 413, ¶ 29, 65 P.3d at 69. Here, the state did not know P.G.'s whereabouts, in Mexico or otherwise. And it made other reasonable efforts to find her. Thus, *Medina* and *Mokake* do not mandate that Rivera's convictions be reversed.

¶17         Finally, citing *Medina*, Rivera contends that the state's "avowals" are hearsay and "amount[] to nothing more than self-serving vouching" and, therefore, are not "competent evidence" to prove unavailability. But *Medina* is distinguishable because here the trial court had more than a prosecutor's unsworn statements on which to rely. *See* 178 Ariz. at 575, 875 P.2d at 808. The state called two witnesses at the unavailability hearing, both of whom were cross-examined by Rivera. Additionally, Rivera's hearsay argument is without merit because our supreme court stated in *Medina* that the trial court is not bound by the rules of evidence in an unavailability hearing as it is essentially

deciding the admissibility of evidence. *See id.* Therefore, Rivera's contention that the state did not present competent evidence fails.

¶18 Ultimately, "[t]he state attempted to find [the witness]. The only thing lacking was a request for the assistance of local authorities, and there is no showing that such action would likely have brought success." *Montaño*, 204 Ariz. 413, ¶ 31, 65 P.3d at 69. Consequently, we cannot find that the trial court abused its discretion in concluding that the state had made reasonable efforts to locate P.G. and, therefore, in declaring her unavailable to testify. *See id.*

## Conclusion

¶19 In light of the foregoing, we vacate Rivera's conviction and sentence for count two, drive-by shooting, but affirm the remaining convictions and sentences.

/s/ *Joseph W. Howard*
JOSEPH W. HOWARD, Chief Judge

CONCURRING:

/s/ *J. William Brammer, Jr.*
J. WILLIAM BRAMMER, JR., Presiding Judge

/s/ *Philip G. Espinosa*
PHILIP G. ESPINOSA, Judge

11