NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

_____

STATE OF ARIZONA, *Appellee,*

*v.*

LORENZO EDWARD DELGADO, *Appellant.*

No. 1 CA-CR 13-0179
FILED 07-03-2014

_____

Appeal from the Superior Court in Maricopa County
No. CR2011-129647-001
The Honorable Susanna C. Pineda, Judge

**AFFIRMED AS MODIFIED**

_____

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Office of the Legal Advocate, Phoenix
By Frances J. Gray
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge Margaret H. Downie and Judge Donn Kessler joined.

---

**J O N E S**, Judge:

¶1 Defendant Lorenzo Delgado appeals convictions for aggravated assault and discharging a firearm at a non-residential structure. Delgado's defense counsel has searched the record on appeal and asserts having found no arguable question of law that is not frivolous. Therefore, in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), defense counsel asks this Court to search the record for fundamental error. Delgado filed a supplemental brief *in propria persona*.[1] After reviewing the record, we find no reversible error. Accordingly, Delgado's convictions and sentences are affirmed.

**FACTS[2] AND PROCEDURAL HISTORY**

¶2 On the evening of May 22, 2011, Delgado and a friend, Everrett S., patronized a night club. Eventually, the two men were asked to leave. Delgado stated, "I'll be back," and walked out of the establishment without further incident, while Everrett S. needed to be physically escorted from the building by security. Once outside, Delgado retrieved a gun from his vehicle, placed it in his back pocket, and walked towards the entrance of the night club. He then told a security guard, E.D., and the night club manager, "I got something for you. I got something for you." E.D. informed Delgado that the gun was unnecessary. At this point, Everrett S. approached Delgado and told him that, in reference to the night club, "They did me dirty," to which Delgado responded, "You know what time it is."

---

[1] Although Delgado's supplemental brief was untimely, given the nature of an *Anders* appeal, we have nonetheless considered its merits.

[2] "We view the evidence and all reasonable inferences therefrom in the light most favorable to sustaining the jury's verdicts." *State v. Miles*, 211 Ariz. 475, 476, ¶ 2, 123 P.3d 669, 670 (App. 2005).

¶3          The two men then returned to their vehicle; Delgado entered on the driver's side and Everrett S. on the passenger side, and began to drive away.  Less than a minute later, E.D., while standing near the night club's entrance, noticed the vehicle Delgado and Everrett S. had gotten into drive past, and a green laser, which he believed was attached to a gun, being pointed from the vehicle in his direction.  Seeing the laser caused E.D. to remove his own gun from its holster because he believed he "was going to get shot."  Several gun shots were then fired from that vehicle, with one striking E.D. in the head, and the vehicle then left the scene.  While being cared for at the scene, E.D. physically described Delgado as the shooter.

¶4          Several weeks after the incident, the police received Delgado's name as a possible suspect.  Based upon this information, the police developed a photo line-up, which was shown to multiple club employees, as well as E.D., who positively identified Delgado as a participant in the incident; E.D. specifically identified Delgado as the person who shot him.

¶5          Consequently, Delgado was indicted on two counts of attempted reckless second degree murder, charged as class two dangerous felonies (Counts 1 and 2); two counts of aggravated assault, class three dangerous felonies (Counts 3 and 4); one count of drive by shooting, a class two dangerous felony (Count 5); one count of misconduct involving weapons, a class four dangerous felony (Count 6); and one count of discharge of a firearm at a structure, a class three dangerous felony (Count 7).[3],[4]  The State alleged Delgado had prior felony convictions and also alleged aggravating circumstances in addition to those prior convictions.  Prior to trial, Count 6 was severed from the remaining counts.

¶6          Thereafter, a nine day jury trial commenced on Counts 1-5 and 7 in September 2012.  Following the presentation of the State's case-in-chief, Delgado moved for acquittal under Arizona Rule of Criminal Procedure 20 on all counts except Counts 3 and 5.  The trial court denied his motion as to Counts 4 and 7.  With respect to Counts 1 and 2, defense

---

[3]          Following a remand to the grand jury for a re-determination of probable cause, a second indictment was issued charging Delgado with the same crimes as the first indictment.

[4]          Everrett S. was indicted as Delgado's co-defendant.  His case was later severed from Delgado's, and was ultimately resolved through a plea agreement.

counsel argued, citing *State v. Curry*, 187 Ariz. 623, 627, 931 P.2d 1133, 1137 (App. 1996), that Arizona does not recognize an offense of "attempted reckless second degree murder" as the State had charged. In response, the trial court dismissed Counts 1 and 2 as a matter of law "without prejudice." Thereafter, the jury convicted Delgado of Counts 3 and 7, and further found those offenses to be dangerous offenses. The jury also found multiple aggravating circumstances for each convicted count. The jury, however, acquitted Delgado of Counts 4 and 5.

¶7        After the verdict, Delgado renewed his Rule 20 motion as to Count 7. He also moved for a new trial on Counts 3 and 7. The trial court denied both motions. Thereafter, in exchange for the State's agreeing not to further pursue attempted murder charges, Delgado pleaded guilty to the severed Count 6. Accordingly, the trial court sentenced Delgado as a repetitive offender to aggravated sentences of 18 years' imprisonment for Counts 3 and 7, and the presumptive sentence of 10 years' imprisonment for Count 6; the trial court ordered these sentences to run concurrently, and awarded Delgado 630 days of presentence incarceration credit. He then timely appealed his convictions for Counts 3 and 7 and timely applied for post-conviction relief for Count 6. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1), 13-4031, and -4033 (A)(1) (2014).[5]

## DISCUSSION

¶8        In his supplemental brief, Delgado raises three issues: (1) the admission of Everrett S.'s statement, "They did me dirty," was hearsay and violated his Sixth Amendment right to confront witnesses against him; (2) the jury was improperly instructed on Count 7; and (3) the trial court erred by dismissing Counts 1 and 2 without prejudice. We address each in turn.

## I.      Everrett S.'s Statement

¶9        Prior to trial, Delgado moved to preclude any testimony that shortly after being expelled from the night club Everrett S. said, "They did me dirty," unless Everrett S. testified at trial. The trial court allowed the statement to come in through other witnesses "to place Mr. Delgado's statement ["You know what time it is"] into some form of context."

---

[5]        Absent material revisions after the relevant dates, statutes cited refer to the current version unless otherwise indicated.

Further, the court found the statement did not qualify as hearsay because "it's not to prove the truth of the matter asserted placed in some form of context." Delgado argues the statement was hearsay because Everrett S. was not called to testify, and therefore its admission violated the Confrontation Clause of the Sixth Amendment. We disagree.

¶10 Hearsay is "a statement that the declarant does not make while testifying at the current trial or hearing," and that "a party offers in evidence to prove the truth of the matter asserted in the statement." Ariz. R. Evid. 801(c)(1)-(2). In this instance, the offered statement made by Everrett S. was not hearsay, as it was not offered to prove the matter asserted in that statement – that the night club in fact wronged Everrett S. *State v. Hernandez*, 170 Ariz. 301, 306, 823 P.2d 1309, 1314 (App. 1991); Ariz. R. Evid. 801(c)(1)-(2). Rather, the statement was properly admitted to place Delgado's subsequent actions and statements into context. *State v. Fischer*, 219 Ariz. 408, 417, ¶ 33, 199 P.3d 663, 672 (App. 2008) (noting a statement admitted simply to show the statement was made is not hearsay); *see Hernandez*, 170 Ariz. at 306, 823 P.2d at 1314 ("Words offered to prove the effect on the hearer are admissible when they are offered to show their effect on one whose conduct is at issue."). As the statement was non-hearsay, the Confrontation Clause was not violated by its admission. *State v. Rogovich*, 188 Ariz. 38, 42, 932 P.2d 794, 798 (1997) ("Testimony not admitted to prove the truth of the matter asserted by an out-of-court declarant . . . does not violate the confrontation clause.").

¶11 Even assuming for the sake of argument that the statement was hearsay, its admission did not violate the Confrontation Clause. As stated by the U.S. Supreme Court in *Crawford v. Washington*, 541 U.S. 36 (2004), the Confrontation Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had had a prior opportunity for cross-examination." *Id.* at 54-55, 68; *see State v. King*, 212 Ariz. 372, 376, ¶ 19, 132 P.3d 311, 315 (App. 2006). A statement is testimonial if "the declarant would reasonably expect it to be used prosecutorially or if it was made under circumstances that would lead an objective witness reasonably to believe the statement would be available for use at a later trial." *State v. Parks*, 211 Ariz. 19, 27, 116 P.3d 631, 639 (App. 2005). Here, Everrett S.'s statement was clearly not testimonial, and thus was not subject to the Confrontation Clause. As such, the trial court did not err in allowing its admission.

## II.    Jury Instruction

**¶12**        Delgado next argues the trial court committed error by giving an erroneous jury instruction.  Delgado did not object to the jury instruction in the trial court, therefore we review for fundamental error. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005).  "To establish fundamental error, [Delgado] must show that the error complained of goes to the foundation of his case, takes away a right that is essential to his defense, and is of such magnitude that he could not have received a fair trial."  *State v. Fierro*, 220 Ariz. 337, 340, ¶ 11, 206 P.3d 786, 789 (App. 2008) (quoting *Henderson*, 210 Ariz. at 567, ¶ 19, 115 P.3d at 607). Delgado must also show the error prejudiced him.  *Id.*

**¶13**        Count 7 charged Delgado with "discharge of a firearm at a structure," pursuant to A.R.S. § 13-1211.  That statute provides:

> A.    A person who knowingly discharges a firearm at a residential structure is guilty of a class 2 felony.

> B.    A person who knowingly discharges a firearm at a nonresidential structure is guilty of a class 3 felony.

A.R.S. § 13-1211.   The jury in this case was given the following jury instruction:

> The crime of discharging a firearm at a structure requires proof of the following:

> > 1.    The Defendant knowingly discharged a firearm; and

> > 2.    The discharge was at a nonresidential structure.

> Nonresidential structure means a structure other than a residential structure.

> Structure means any building, vehicle or place with four sides and a floor that is separately securable by any other structure attached to it and that is being used for lodging, business or transportation.[6]

---

[6]      The instruction given tracked the language of Revised Arizona Jury Instructions (RAJI) Statutory Criminal 12.11 (Discharging a Firearm at a Structure).

The jury was also instructed on the definitions of "knowingly" and "intentionally."

**¶14**　　　　Delgado argues the instruction, as given, constitutes fundamental error in two ways: (1) it does not instruct the jury regarding the applicable *mens rea* requirement to the nonresidential structure element of the crime; and (2) it does not instruct the jury to find the "location of the structure." We find no error, fundamental or otherwise.

**¶15**　　　　As to his first contention, Delgado argues the instruction allowed the jury to convict him of having knowingly discharged his weapon without requiring it to also find he fired at what he knew to be a nonresidential structure. However, the charged crime requires simply that a person knowingly discharge a firearm at a structure. *See* A.R.S. § 13-1211(A)-(B). Whether the structure was residential or nonresidential concerns only the class designation of the offense. *See State v. Payne*, 233 Ariz. 484, 505-06, ¶¶ 70-73, 314 P.3d 1239, 1260-61 (2013).

**¶16**　　　　Even assuming error, that error was harmless. An error in a jury instruction is harmless if it appears, beyond a reasonable doubt, that the error did not contribute to the jury's verdict, and a review of the entire trial record demonstrates "every fact necessary to establish every element of the offense beyond a reasonable doubt." *State v. Dann*, 205 Ariz. 557, 565, ¶ 18, 74 P.3d 231, 239 (2003) (citing *Rose v. Clark*, 478, U.S. 570, 581 (1986)). In its review of the record, "the reviewing court must determine 'whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element. If the answer to that question is no, holding the error harmless does not reflect a denigration of the constitutional rights involved.'" *Id.* (quoting *Neder v. United States*, 527 U.S. 1, 19 (1999)).

**¶17**　　　　The evidence at trial demonstrated Delgado had a gun on his person; a firearm, with the aid of a laser, was aimed in the direction of the night club's entrance from the vehicle driven by Delgado; Delgado had just frequented the night club and knew it to be a nonresidential structure; and multiple gunshots were fired at the entrance of the night club from the vehicle. There was also testimony that Delgado owned a gun with a laser attached to it. Therefore, the record demonstrates beyond a reasonable doubt that any error in the jury instruction did not affect Delgado's verdict. *Id.* at 239-40, ¶ 19, 75 P.3d at 565-66.

**¶18**　　　　Moreover, Delgado's defense at trial rendered the jury instruction less significant as his defense did not revolve around a

mistaken discharge or a misunderstanding of the nature of the structure, but upon his unrelenting assertion that he was not the shooter. *See Dann*, 205 Ariz. at 565 n.3, ¶ 19, 74 P.3d at 239 n.3.

**¶19** Next, Delgado argues the trial court failed to instruct the jury it had to find the structure he fired upon was actually located at the address specified in the indictment. *See State v. Rivera*, 226 Ariz. 325, 327-29, ¶¶ 4-9, 247 P.3d 560, 562-64 (App. 2011). However, the specific address of the structure is not an element of the crime, and the State was therefore not required to provide testimony as to its specific address. *See* A.R.S. § 13-1211.

**¶20** Further, to the extent Delgado argues there was insufficient evidence for the jury to find he knowingly discharged his weapon *at* the night club, we disagree. In reviewing sufficiency of the evidence, we view the evidence presented at trial to determine whether substantial evidence supports the jury's verdict, and do so while "viewing the facts in the light most favorable to sustaining the jury verdict." *State v. Cox*, 217 Ariz. 353, 357, ¶22, 174 P.3d 265, 269 (2007). As previously mentioned, the record demonstrates multiple gun shots were fired from the vehicle driven by Delgado, and that E.D. was struck by one of the gun shots while he was standing directly outside of the entrance to the night club. His wounding could not have occurred had the firearm not been discharged at the night club. Further, Delgado employed a laser to help aim the weapon, and that laser was pointed directly at the entrance of the night club, further illustrating he knowingly fired it at the club's entrance. Therefore, the evidence was sufficient to allow a reasonable jury to find Delgado had committed the charged offense. *Id.* ("The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.") (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

**¶21** Therefore, we find the jury instruction did not constitute fundamental, reversible error, and further find sufficient evidence supported Delgado's conviction on Count 7.

## III. Dismissal of Counts 1 and 2 without Prejudice

**¶22** Counts 1 and 2, as charged, indicated Delgado had attempted to commit reckless second degree murder. As noted by Delgado in his Rule 20 motion, such a crime does not exist under Arizona law. *Curry*, 187 Ariz. at 627, 931 P.2d at 137. Recognizing that to be the

case, the trial court, relying upon *State v. Sanders*, elected to dismiss those counts without prejudice rather than grant Delgado's Rule 20 motion for acquittal. After trial, and in exchange for Delgado's plea agreement on Count 6, the State agreed it would not pursue attempted murder charges against Delgado. Delgado argues the trial court erred by dismissing Counts 1 and 2 without prejudice, rather than "with prejudice," thereby allowing the State to later use them as leverage in the plea negotiations, because jeopardy had attached.[7] We review *de novo* a question of double jeopardy. *State v. Siddle*, 202 Ariz. 512, 515, ¶ 7, 47 P.3d 1150, 1153 (App. 2002).

**¶23** Delgado did not raise the double jeopardy issue in the trial court; therefore, our review is for fundamental error. *Henderson*, 210 Ariz. at 567, ¶ 19, 115 P.3d at 607. If found, a violation of the double jeopardy clause does constitute fundamental error. *State v. Cooney*, 233 Ariz. 335, 339-40, ¶ 11, 312 P.3d 134, 138-39 (App. 2013).

**¶24** Even assuming Delgado's assertion that jeopardy attached to the dismissed counts, his argument is without merit as the double jeopardy clause would not have prevented the State from bringing new, legitimate charges of attempted second degree murder against Delgado. Double jeopardy protects an individual, following an acquittal of an offense, from being charged a second time with the same offense. *Siddle*, 202 Ariz. at 516, ¶ 8, 47 P.3d at 1154. It likewise prevents an individual from being charged with a greater or lesser offense of the acquitted offense. *See State v. Price*, 218 Ariz. 311, 313, ¶ 5, 183 P.3d 1279, 1281 (App. 2008). In this instance, the non-existent and non-chargeable offense of "attempted reckless second degree murder" would be neither the same offense as an appropriate attempted second degree murder charge nor a lesser included offense. *See Siddle*, 202 Ariz. at 516, ¶ 10, 47 P.3d at 1154 ("Distinct statutory provisions constitute the same offense if they are comprised of the same elements. If 'each provision requires proof of an additional fact that the other does not,' they are not the same offense.") (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)); *State v. Wall*, 126 Ariz. 1, 3, ¶ 4, 126 P.3d 148, 150 (2006) ("An offense is 'lesser included' when the 'greater offense cannot be committed without necessarily

---

[7] "The double jeopardy clause of the Fifth Amendment protects a criminal defendant from multiple prosecutions for the same offense." *State v. Minnitt*, 203 Ariz. 431, 437, ¶ 27, 55 P.3d 774, 780 (2002); U.S. Const. amend. V. The analogous clause in Arizona Constitution provides the same protection. Ariz. Const. art. 2, § 10.

committing the lesser offense.'") (citing *State v. Dugan*, 126 Ariz. 194, 195, 608 P.2d 771, 772 (1980)). It would create a logical and legal *non-sequitur* to find that bringing a charge that did not exist and could not be charged in the first instance triggers double jeopardy, thereby preventing a legitimate charge being brought later. Therefore, the State was not prevented from pursuing legally appropriate attempted second degree murder charges against Delgado.

¶25 Therefore, we find no double jeopardy violation and no resultant fundamental error.

**CONCLUSION**

¶26 After reviewing the entire record for reversible error, we find none. *See Leon*, 104 Ariz. at 300, 451 P.2d at 881. All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. So far as the record reveals, Delgado was represented by counsel at all stages of the proceedings and was present at all critical stages. There was sufficient evidence for the jury to find Delgado committed the offenses, and the sentences imposed were within the statutory limits.

¶27 We have, however, noted an error in the sentencing minute entry. The sentencing minute entry ordered Delgado to "submit to DNA testing for law enforcement identification purposes" and also to "pay the applicable fee for the cost of [DNA] testing in accordance with A.R.S. § 13-610." A.R.S. § 13-610, however, does not authorize the trial court to order a convicted person to pay for the cost of that DNA testing. *State v. Reyes*, 232 Ariz. 468, 472, ¶ 14, 307 P.3d 35, 39, (App. 2013). Therefore, we vacate that portion of the sentencing minute entry which requires Delgado to do so. Accordingly, we affirm Delgado's convictions and sentences as modified.

¶28 After the filing of this decision, defense counsel's obligations pertaining to Delgado's representation in this appeal have ended. Defense counsel need do no more than inform Delgado of the outcome of this appeal and his future options, unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *State v. Shattuck*, 140 Ariz. 582, 584-85, 684 P.2d 154, 156-57 (1984).

¶29 Delgado has 30 days from the date of this decision to proceed, if he wishes, with an *in propria persona* petition for review. *See* Ariz. R. Crim. P. 31.19(a). Upon the court's own motion, we also grant

Delgado 30 days from the date of this decision to file an *in propria persona* motion for reconsideration.



Ruth A. Willingham · Clerk of the Court
FILED: gsh