NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MICHAEL JOE VALLEJOS, *Appellant.*

No. 1 CA-CR 15-0600
FILED 12-13-2016

Appeal from the Superior Court in Coconino County
No. S0300CR201400637
The Honorable Dan R. Slayton, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By David Simpson
*Counsel for Appellee*

David Goldberg Attorney at Law, Fort Collins, CO
By David Goldberg
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Randall M. Howe joined.

**K E S S L E R**, Judge:

**¶1**       Michael Joe Vallejos ("Defendant") appeals his convictions and sentences for second-degree murder, aggravated assault, and assisting a criminal street gang.  He asserts insufficient evidence supports his murder conviction, and argues the court improperly instructed the jury on second-degree murder and accomplice liability. Defendant also contends the court erred in failing to sever the murder and assault charges for separate trials. Finally, Defendant argues the court abused its discretion by not permitting him to read into evidence his co-defendant, Jeremiah Barlow's, testimony from a previous trial. For the following reasons, we affirm.

### FACTS[1] AND PROCEDURAL HISTORY

**¶2**       JC, a member of a "Westside" gang, was outside his apartment in the early morning smoking a cigarette. Defendant, who lived across the street and was a member of a rival "Eastside" gang, approached JC. Eastside members who were accompanying Defendant, including Barlow, stood at a distance. Defendant inquired into JC's gang affiliation, and when JC responded that he was a "Westsider," Defendant stabbed him several times. As JC pushed Defendant away, the other Eastside members proceeded toward JC, and JC fled to his apartment. JC survived the attack, and Defendant returned home along with his fellow gang members.

**¶3**       Meanwhile, JC's neighbor, ER, heard "a noise" and observed Defendant and his fellow gang members running away from the apartment complex. Thinking "a fight [was] waiting to break out," ER telephoned his cousin, BR, a Westside gang member.

---

[1]       We view the facts in the light most favorable to upholding the verdicts and resolve all reasonable inferences against the defendant. *State v. Harm*, 236 Ariz. 402, 404 n.2, ¶ 2 (App. 2015) (citations and quotations omitted).

¶4        Shortly thereafter, BR and several current and former Westside gang members walked towards Defendant's house while yelling "Westside" and throwing rocks. Defendant and other Eastside members, some armed with knives, exited the house and a fight ensued between the rival gangs. Defendant, Barlow, and Norberto Ramos-Madrid ("Beto") stabbed JH multiple times. JH died from the wounds.

¶5        The State, alleging both direct and accomplice liability, charged Defendant, Barlow, and Beto with second degree murder ("Count 1"), aggravated assault ("Count 2"), and assisting a criminal street gang ("Count 3"). Defendant moved pre-trial to sever his and Barlow's trials. The court denied the motion, and Defendant and Barlow were tried together. Barlow testified in his own defense. The court subsequently ordered a mistrial after the jury could not agree on a verdict. Before the second trial, Barlow pled guilty to manslaughter and was sentenced to prison.[2] Barlow did not testify at the second trial, and Defendant requested permission to read Barlow's testimony from the first trial into evidence. The court found Defendant failed to prove Barlow's unavailability and denied the request.

¶6        The jury found Defendant guilty as charged. The court imposed a maximum prison term of twenty-five years for Count 1 to be served consecutively to concurrent maximum prison terms of twenty-five years for both Counts 2 and 3. Defendant timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2016), 13-4031 (2016), and 13-4033(A)(1) (2008).[3]

## DISCUSSION

I.        Sufficiency of Evidence:  Count 1

¶7        Defendant argues there was insufficient evidence to support his conviction for second-degree murder. Specifically, he contends the evidence was undisputed that Beto inflicted the fatal knife wound after Defendant's "conduct was complete."

¶8        We review claims of insufficient evidence de novo. *State v. Bible*, 175 Ariz. 549, 595 (1993) (citation omitted). "Reversible error based on insufficiency of the evidence occurs only where there is a complete absence

---

[2]        Beto was tried separately and acquitted of all charges.

[3]        Absent material changes from the relevant date, we cite a statute's current version.

of probative facts to support the conviction." *State v. Soto-Fong*, 187 Ariz. 186, 200 (1996) (quotation and citation omitted). "To set aside a jury verdict for insufficient evidence it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury." *State v. Arredondo*, 155 Ariz. 314, 316 (1987) (citation omitted).

¶9 To secure the conviction on Count 1, the State was required to prove beyond a reasonable doubt that Defendant, without premeditation, caused JH's death either (1) intentionally; (2) knowing that his conduct would cause death or serious physical injury; or (3) under circumstances manifesting extreme indifference to human life, Defendant engaged in reckless conduct that created a grave risk of death. *See* A.R.S. § 13-1104(A) (2009). Defendant was also charged as an accomplice, which, in relevant part, is defined as "a person who with the intent to promote or facilitate the commission of an offense . . . [a]ids . . . another person in . . . committing an offense." A.R.S. § 13-301(2) (2008); *see* A.R.S. § 13-303(A)(3) (2008) ("A person is criminally accountable for the conduct of another if . . . [t]he person is an accomplice of such other person in the commission of an offense").

¶10 As an initial matter, we reject Defendant's characterization of the record. The trial evidence did not unequivocally establish that Beto alone was responsible for JH's murder because he inflicted the final stab wound. The medical examiner testified the cause of death was multiple sharp force injuries, and he could not determine the sequence in which the twenty-three wounds were inflicted. He explained that JH suffered four wounds that individually were fatal, one of which "on the left aspect of the chest . . . [was] the most lethal of all of them," four other wounds that resulted in perforated arteries, and one that "hit a vein, a large vein." The medical examiner opined that even if the fatal wounds "happen[ed] last," all of the wounds contributed to the "cumulative [e]ffect" of JH's blood loss, which the record reflects resulted in "traumatic cardiac arrest" and, ultimately, JH's death.

¶11 As for Defendant's culpability, after the attack on JH Defendant bragged, "I was drilling him, I was getting him," and multiple eye witnesses directly observed Defendant holding JH in place by the shoulder and either stabbing him with a knife numerous times, or making stabbing motions. The trial evidence established that Defendant, Barlow, and Beto all joined in stabbing JH, and the three "surrounded" JH, thus preventing his escape. Although Beto administered the final knife stab to JH's chest, that does not warrant reversal. As noted, the evidence did not show that this wound alone resulted in JH's death. Additionally, and

4

contrary to Defendant's assertion otherwise, Beto was not the only individual who was observed stabbing JH in the chest. So was Defendant.

¶12        The foregoing substantial evidence supports the conclusion that, by holding JH's shoulder and stabbing him, Defendant kept JH in place, and by doing so—in addition to participating in the continued stabbing of JH's head, chest, abdomen, and arms resulting in twenty-three wounds to his chest while surrounding JH to prevent his escape—Defendant aided Barlow's and Beto's deadly stabbing of JH. A reasonable jury could conclude from the evidence presented that Defendant intended to kill JH; thus, sufficient evidence supports Defendant's conviction for second-degree murder.

II.     Jury Instruction:  Count 1

¶13        In a related argument, Defendant contends the trial court improperly instructed the jury on accomplice liability resulting in a conviction "of a form of second-degree murder not cognizable as an accomplice under Arizona law." As Defendant properly concedes, we review for fundamental error because he did not object at trial to the jury instructions on this basis. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005) (citation omitted).

¶14        To prevail under this standard of review, a defendant must establish that error occurred, the error was fundamental, and the error resulted in prejudice. *Id.* at 567, ¶ 20 (citations omitted). Fundamental error is error that "goes to the foundation of his case, takes away a right that is essential to his defense, and is of such magnitude that he could not have received a fair trial." *Id.* at 568, ¶ 24 (citation omitted). The showing required to establish prejudice "differs from case to case." *Id.* at 568, ¶ 26 (citations omitted). A defendant "must show that a reasonable jury, applying the appropriate standard of proof, could have reached a different result." *Id.* at 569, ¶ 27.

¶15        The jury was instructed as follows:

> "Accomplice" means a person who, with the intent to promote or facilitate the commission of the offense, does any of the following:
>
> 1. Solicits or commands another person to commit the offense;
>
> 2. Or aids, counsels, agrees to aid, or attempts to aid another person in planning or committing the offense;

3. Or provides means or opportunity to another person to commit the offense.

A defendant is criminally accountable for the conduct of another if the defendant is an accomplice of such person in the commission of the offense, *including any offense that is a natural and probable or reasonably foreseeable consequence of the offense for which the person was an accomplice.*

Now, the crime of second-degree murder requires proof of one of the following:

1. The defendant intentionally caused the death of another person;

2. Or the defendant caused the death of another person by conduct which the defendant knew would cause death *or serious physical injury*;

3. Or under circumstances manifesting extreme indifference to human life, the defendant recklessly engaged in conduct that created a grave risk of death and thereby caused the death of another person. The risk must be such that disregarding it was a gross deviation from what a reasonable person in the defendant's situation would have done.

(emphasis added).

¶16        These instructions mirror the Arizona statutes governing accomplice liability and second-degree murder. A.R.S. §§ 13-301, -303(A), -1104(A). Defendant nonetheless argues the emphasized language in the above instructions and the State's closing arguments "led . . . the jury . . . to believe that [Defendant] could be found guilty as an accomplice even if his intent was to simply aid his codefendants in causing some physical injury." Defendant relies on *State v. Felix*, 237 Ariz. 280 (App. 2015) for the proposition that accomplice liability requires proof of the defendant's intent to promote or facilitate the specific offense charged.

¶17        *Felix* is not applicable here. In that case, the defendant was convicted of attempted second-degree murder. *Id.* at 283-84, ¶ 9. Under such circumstances, we found the instruction that permitted a conviction based on conduct that the defendant knew would cause serious physical injury to be fundamental error. *Id.* at 284-85, ¶ 14. We reasoned proof of intent to cause serious physical injury improperly relieves the State of its

burden to prove attempted second-degree murder's essential element of intent to cause death. *Id.*; *see State v. Ontiveros*, 206 Ariz. 539, 542, ¶ 14 (App. 2009) ("The offense of attempted second-degree murder requires proof that the defendant intended or knew that his conduct would cause death.").

**¶18**         There was no reversible error here, however, because there is sufficient evidence Defendant murdered JH. He repeatedly stabbed JH and held JH by the shoulder while Defendant and others stabbed him. Because there was sufficient evidence that shows Defendant killed JH, Defendant cannot prove that the alternative theory of accomplice liability he now challenges prejudiced him. His speculation of prejudice is insufficient. *See State v. Trostle*, 191 Ariz. 4, 13-14 (1997) (noting we will not presume prejudice where none appears affirmatively in the record).

III.     Failure to Sever Counts 1 and 2

**¶19**         Defendant argues that he should have faced separate trials for Counts 1 and 2. He contends the offenses were not sufficiently connected or similar in nature to justify a joint trial.  He also asserts the joint trial violated his due process rights under the United States Constitution.

**¶20**         Defendant did not at any time move to sever the second-degree murder and assault charges. Accordingly, we review for fundamental error whether the trial court was required sua sponte to sever Counts 1 and 2.  *See State v. Laird*, 186 Ariz. 203, 206 (1996) (noting that failure to properly renew motion to sever pursuant to Arizona Rule of Criminal Procedure 13.4(c) results in fundamental error review on appeal of severance issues).

**¶21**         Rule 13.3(a) of the Arizona Rules of Criminal Procedure ("Rule") states:

> Provided that each is stated in a separate count, 2 or more offenses may be joined in an indictment, information, or complaint, if they:
>
> (1) Are of the same or similar character; or
>
> (2) Are based on the same conduct or are otherwise connected together in their commission; or
>
> (3) Are alleged to have been a part of a common scheme or plan.

Ariz. R. Crim. P. 13.3(a). Properly joined offenses must be severed if "necessary to promote a fair determination of the guilt or innocence of [the] defendant."[4] Ariz. R. Crim. P. 13.4(a). Rule 13.4(a) "does not require the court to order a severance; it only gives it the discretion to do so on its own initiative." *State v. Longoria*, 123 Ariz. 7, 10 (App. 1979).

**¶22**    Here, joinder of Counts 1 and 2 was proper under the second subsection of Rule 13.3(a), and severance was not required to ensure a fair trial. The record reflects Defendant stabbed JH roughly five minutes after he stabbed JC. In addition to occurring proximately to each other temporally, Defendant stabbed JH in the street adjacent to the apartment complex where he stabbed JC. The evidence was undisputed that rival gang affiliations motivated Defendant to commit the offenses in his attempt to assert his gang's control over the neighborhood. Finally, Defendant's knowledge that he had just stabbed a Westsider explains why he and other Eastsiders armed themselves with knives when they heard the group of Westsiders taunting them five minutes after Defendant stabbed JC.

**¶23**    Under these circumstances, Counts 1 and 2 were sufficiently "connected together in their commission," and we cannot conclude the trial court abused its discretion by failing to sua sponte sever the charges for separate trials. *See State v. Prion*, 203 Ariz. 157, 162, ¶ 32 (2002) (citations omitted) ("The 'otherwise connected together in their commission' language addresses whether evidence of the two crimes was so intertwined and related that much the same evidence was relevant to and would prove both, and the crimes themselves arose out of a series of connected acts."); *State v. Comer*, 165 Ariz. 413, 418 (1990) (concluding trial court did not abuse its discretion in denying motion to sever where the record demonstrated the "two sets of offenses were part of a connected series of events which shared the common purpose of obtaining money and supplies").

IV.    Refusal to Admit Barlow's Prior Testimony

**¶24**    Defendant argues the court erred in not permitting him to read into evidence Barlow's testimony from the first trial because, according to Defendant, the court erroneously found that he failed to prove Barlow's unavailability. As a result, Defendant contends his constitutional rights to confront witnesses and present a complete defense were violated.

---

4    Furthermore, if Rule 13.3(a)(1) is the only basis for a joint trial, a defendant is entitled to severance as a matter of right unless the evidence of the other offense would be admissible if the offenses were tried separately. Ariz. R. Crim. P. 13.4(b).

We review a finding of witness unavailability for abuse of discretion. *State v. Lehr*, 227 Ariz. 140, 148-49, ¶ 30 (2011) (citation omitted). Rule 19.3 provides:

> Statements made under oath by a party or witness during a previous judicial proceeding . . . shall be admissible in evidence if:
>
> (i) The party against whom the former testimony is offered was a party to the . . . proceeding during which a statement was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which the party now has . . . and
>
> (ii) The declarant is unavailable as a witness, or is present and subject to cross-examination.

Ariz. R. Crim. P. 19.3(c)(1); *see* Ariz. R. Evid. 804(b)(1). "Unavailability" in this context includes situations where the declarant "refuses to testify about the subject matter despite a court order to do so." Ariz. R. Evid. 804(a)(2).

¶25 Defendant argues Barlow was unavailable for the second trial because he was incarcerated at the time and would have invoked his Fifth Amendment right to not testify. We disagree. The record reflects Barlow's counsel informed the State that "[h]e was *intending to argue* that [Barlow] still had a Fifth Amendment privilege and . . . was still under the appeal time for Rule 32 and so [Barlow] would not testify in this case." (emphasis added). However, whether to assert the Fifth Amendment privilege against self-incrimination is a witness's personal choice, not his lawyer's. *State v. McElyea*, 130 Ariz. 185, 187-88 (1981) (citations omitted). And here, neither the parties nor the trial court knew what Barlow would decide because nothing in the record indicates Defendant sought, much less served, a subpoena to order Barlow's appearance despite knowing that Barlow was incarcerated in a Department of Corrections facility.

¶26 Absent Barlow's refusal to testify in response to a court order requiring his appearance at the second trial, or at least a good-faith effort on Defendant's part to serve Barlow with a subpoena, we cannot say the trial court abused its discretion in finding Defendant failed to prove Barlow's unavailability. *See State v. Edwards*, 136 Ariz. 177, 182 (1983) ("Ordinarily, a good-faith effort would require issuance of a subpoena and diligent efforts to serve it."). Consequently, the court did not err in denying Defendant's request to admit Barlow's previous trial testimony. Similarly, preclusion of Barlow's testimony did not violate Defendant's confrontation

rights or his right to present a complete defense. *See State v. Medina*, 178 Ariz. 570, 576 (1994) (holding that witness was not unavailable for confrontation purposes when proponent of testimony did not undertake "[a]ffirmative measures . . . [to] successfully produc[e] the declarant").

## CONCLUSION

¶27       For the foregoing reasons, Defendant's convictions and sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA